UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD MILLER,

    Plaintiff,                                             Case No.

v.                                                      Hon.

CONSUMERS ENERGY,

    Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

### COMPLAINT AND JURY DEMAND

Plaintiff Chad Miller, by and through his attorneys, HURWITZ LAW PLLC, hereby alleges as follows:

## INTRODUCTION

1. This is a civil action for money damages, liquidated damages, costs, attorneys' fees and other relief against Defendant Consumers Energy ("Defendant").

2. Plaintiff Chad Miller asserts claims of age discrimination in violation of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* and Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA), M.C.L. 37.2101, *et seq.*

## PARTIES AND JURISDICTION

3. Plaintiff Chad Miller ("Plaintiff") is an individual residing in Portland, Ionia County, Michigan.

4. Consumer's Energy is an energy company headquartered in Jackson, Jackson County, Michigan.

5. This Court has jurisdiction over the claims under the ADEA, 29 U.S.C. § 621, *et seq.* and supplemental jurisdiction of the claim under the ELCRA, M.C.L. 37.2101, *et seq.* pursuant to 28 U.S.C. § 1367.

6. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as it is the district where Defendant resides.

7. Plaintiff filed charges of age discrimination with the Equal Employment Opportunity Commission on June 2, 2023, and it has been over 60 days since he filed his charge.

## GENERAL ALLEGATIONS

8. Defendant is a for-profit utility company that provides electricity and natural gas for Michigan residents.

9. At all times relevant to this Complaint, Plaintiff was employed as Senior Manager of Small & Medium Business Products for Defendant.

10. Plaintiff was well-respected in the workplace and admired for his experience.

11. Plaintiff functioned as a leader within his team and served as a mentor to other employees. Throughout his employment, he received consistently positive performance reviews.

12. Plaintiff had no prior history of discipline.

13. Plaintiff never received any formal or informal warnings.

14. Plaintiff was never placed on a performance improvement plan.

15. Plaintiff consistently received positive performance reviews.

16. Beginning in early 2020, Plaintiff had multiple discussions with various successive supervisors concerning the prospect of promotion.

17. In 2021, Defendant's Director of Energy Waste Reduction, Ted Ykimoff, was appointed as Plaintiff's supervisor.

18. Mr. Ykimoff assured Plaintiff that he would attempt to promote Plaintiff in recognition of his performance.

19. Mr. Ykimoff created the position of "Small and Medium Business Lead (SMB Lead)" with the intention of promoting Plaintiff into this new position.

20. At this time, Mr. Ykimoff had informed Plaintiff that he was to receive the promotion and the announcement was forthcoming.

21. However, the SMB Lead position was eliminated during restructuring and Plaintiff remained in his previous position of Senior Manager.

22. In or around July 2021, Greg Stevenson was appointed as Director of Small & Medium Business and became Plaintiff's supervisor.

23. Mr. Stevenson informed Plaintiff that he would continue the efforts to rectify the situation and look for a means to increase Plaintiff's salary approximately Director-level compensation.

24. Mr. Stevenson acknowledged Plaintiff's expertise and stated that he "has other ways to compensate" and that he was "going to fix this situation."

## Plaintiff's Job Applications

25. In or about July 2021, Plaintiff applied for an internal promotion to Residential Director.

26. Plaintiff was well qualified for the position, with over 12 years of relevant experience and industry expertise.

27. However, Plaintiff never received an interview, and the position was ultimately offered to a much younger candidate.

28. Plaintiff also applied to two additional international positions: Director of Product Management and Manager of Product Management. Plaintiff was well qualified for both positions.

29. The Manager of Product Management role was not initially posted on Defendant's job application portal.

30. Defendant's Executive Director of Demand Side Management, Emily McGraw, acknowledged it was an oversight that the position was not initially posted.

31. Following Plaintiff's discussion with Ms. McGraw, the role was posted for three days, during which Plaintiff promptly applied.

32. Ms. McGraw informed Plaintiff that the hiring decision had already been made and that Defendant did not want to 'waste Plaintiff's time' by granting him an interview.

33. During the application process, it was well known that Ms. McGraw had already hired Amy Glapinski, a much younger employee with less program responsibility and experience.

34. Ms. Glapinski was the only individual to whom an interview was extended for the position.

35. Several of Plaintiff's highly respected and experienced colleagues, who applied for leadership positions within his department, were not offered interviews.

36. Defendant consistently overlooked older, more qualified, candidates for promotional positions, and instead chose to promote younger individuals into leadership positions.

37. After nearly two years of attempting to apply for a promotion, Plaintiff informed Defendant's Human Resources department that he had serious concerns regarding age discrimination.

**Plaintiff's Performance Review**

38. In or about January 2023, Plaintiff received his performance review for 2022.

39. Plaintiff's review described him as a "subject matter expert," his performance as "fantastic work," and stated that his work outcomes produced "fantastic business results."

40. Despite his "fantastic work", Plaintiff's review placed him into the performance category of "Needs Improvement."

41. Plaintiff had previously discussed his performance with his manager Mr. Stevenson, who stated that Plaintiff required no improvement going into 2023.

42. Plaintiff had never received a "needs improvement" performance review prior to his complaint regarding age discrimination in Defendant's internal hiring practices.  Prior to his complaint he had no history of disciplinary action, formal or informal warnings, or performance improvement plans.

6

43. In March 2023, Plaintiff met with Mr. Stevenson to further discuss his review.

44. Plaintiff requested a "360-degree review" of his performance, to which Mr. Stevenson agreed.

**Plaintiff's Termination**

45. Prior to the completion of his "360-degree review" Plaintiff was terminated on April 10, 2023.

46. Defendant cited Plaintiff's "Needs Improvement" performance review as the reason for his termination.

47. A number of Plaintiff's older colleagues were also terminated in or around April 2023 due to alleged performance issues.

48. Plaintiff's younger colleague Jillian Davis, who did not have the same amount of experience and did not consistently meet performance goals, did not receive negative performance reviews and was not terminated by Defendant.

49. Plaintiff's termination letter stated that Defendant had "determined we cannot allow you additional time to improve your performance to meet our standards."

50. Plaintiff's lower performance rating was attributed to minor incidents that his supervisor did not personally witness.

51. Plaintiff had never had a significant performance issue during his tenure with Defendant and was quick to resolve any minor opportunities for improvement.

52. Confused about his performance review, Plaintiff had discussions with individuals who participated in the review after he was terminated.

53. All individuals who Plaintiff spoke to consistently shared positive feedback and high regard for Claimant's work.

54. Plaintiff was terminated without consideration of his decade-long contribution to Defendant.

55. Plaintiff was still seen as a team leader and mentor at the time of his termination.

## COUNT I
## VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA")
## (DISPARATE TREATMENT BASED ON AGE)

56. Plaintiff incorporates the foregoing paragraphs by reference herein.

57. Pursuant to the Age Discrimination in Employment Act ("ADEA"), Plaintiff is a member of a "protected class" because he was 49 years old at the time of his termination.

58. Plaintiff met or exceeded Defendant's legitimate job expectations during his employment.

59. Defendant took one or more adverse actions against Plaintiff because of his age, including subjecting Plaintiff to different and less favorable terms and

conditions of employment than employees who were younger, and then terminating Plaintiff without any justification after he had been an exemplary employee for many years.

60. Defendant treated similarly situated younger employees more favorably than they treated Plaintiff.

61. Defendant's discriminatory conduct was intentional.

62. Defendant's conduct was done with malice or reckless indifference to Plaintiff's rights under federal law.

63. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age on June 30, 2022.

64. Plaintiff was damaged by Defendant's discriminatory conduct in violation of the ADEA. His damages include, but are not limited to, his lost wages, damage to his career, lost benefits, future pecuniary losses, inconvenience, emotional and psychological harm and other harm.

## COUNT II
### DISCRIMINATION IN VIOLATION OF THE ELCRA
**(DISPARATE TREATMENT BASED ON AGE)**

65. Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

66. Defendant employed Plaintiff within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2010, *et seq*.

67. Defendant is an employer within the meaning of the ELCRA, M.C.L. 37.2101, *et seq.*

68. The ELCRA prohibits, among other things, discrimination based upon age.

69. Plaintiff was forty-nine (49) years old at the time of his termination.

70. Plaintiff was qualified for his respective position.

71. Plaintiff was qualified for all positions that he applied for.

72. Plaintiff was held to different standards than his coworkers based on his age.

73. Plaintiff suffered adverse action, including termination, while younger employers were retained.

74. Defendant's conduct was willful.

75. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff was harmed, and continues to be harmed, in that he has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional distress, outrage, humiliation, indignity and disappointment.

## COUNT III
## VIOLATION OF THE ADEA, RETALIATION

76. Plaintiff restates the foregoing paragraphs as set forth fully herein.

77. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

78. Defendant subjected Plaintiff to adverse employment actions including terminating his employment.

79. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

80. But for Plaintiff's protected activity, Defendant would not have subjected him to such adverse actions.

81. As a result of Defendant's conduct, Plaintiff has suffered financial loss and emotional distress as described herein.

## COUNT IV
## RETALIATION IN VIOLATION OF
## MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT
## M.C.L. 37.2202(a)(1)

82. Plaintiff incorporates the preceding allegations as if fully set forth herein.

83. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. 37.2202 *et seq.*

84. Plaintiff engaged in protected activity by opposing Defendant's discriminatory behavior.

85. Defendant subjected Plaintiff to adverse employment actions including terminating his employment.

86. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

87. But for Plaintiff's protected activity, Defendant would not have subjected him to such adverse actions.

88. As a result of Defendant's conduct, Plaintiff has suffered financial loss and emotional distress as described herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff claims as follows:

A. Judgment against Defendant in the amount of Plaintiff's unpaid back pay, front pay, compensatory damages, emotional distress, punitive damages, and attorney fees under the ELCRA and ADEA;

B. Interest;

C. Compensatory damages, including front pay and back pay;

D. All further relief as the Court deems just and equitable.

Respectfully submitted<br>
HURWITZ LAW PLLC<br>
<br>
*/s/ Noah S. Hurwitz*

13

                          Noah S. Hurwitz (P74063)
                          Attorney for Plaintiffs
                          340 Beakes St. Ste. 125
                          Ann Arbor, MI 48104
                          (844) 487-9489

Dated: April 10, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHAD MILLER,

    Plaintiff,    Case No.

v.    Hon.

CONSUMERS ENERGY,

    Defendant.

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
HURWITZ LAW PLLC
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff Chad Miller, by and through his attorneys, HURWITZ LAW PLLC, hereby demand a jury trial in the above-captioned matter for all issues so triable.

    Respectfully submitted
    HURWITZ LAW PLLC

    */s/ Noah S. Hurwitz*
    Noah S. Hurwitz (P74063)
    Attorney for Plaintiffs
    340 Beakes St. Ste. 125

                                        Ann Arbor, MI 48104
                                        (844) 487-9489

Dated: April 10, 2024